Shaw C. J.
delivered the opinion of the Court.' A péti-' tion for partition is a proceeding, in this commonwealth, found-e<l on statute ; but in most respects it is in the nature ol a real action, and where the title of the petitioner is contested; it is ke pUt jn jssue an(j tried, between him and any party claiming adversely and denying the title of the petitioner, or denying that he is seised of the proportionable part claimed by him in the petition. And like other real actions, the question in issue is one of legal title, and not of mere equitable interests. One peculiarity distinguishing the petition for partition from1 other real actions, is, that persons not named, in the petition, but having adverse claims of legal title, may appear and plead, aver their own title and traverse the title of the petitioner. In the present case, although Brooks is first named in the petition, and although for that reason his name appears in the title of the cause, yet in truth he does not appear or plead, but the adverse title is set up, and the petitioner’s title is traversed, by Peter Gassner of New York, who claims the legal title' under deeds from John Soley, of a date prior to the petitioner’s levy, and traverses the title of the petitioner, who also claims the legal title by virtue of the levy of an execution upon the estate as the property of the same John Soley. The question therefore' is upon the comparative validity of legal title, derived by the parties respectively from John Soley, by the several conveyances under which they respectively claim.
Under our statute, a mortgage in fee is considered to many purposes as giving a seisin to the mortgagee, upon which he may maintain a real action against the mortgager and all persons claiming under him, and make a good title defeasible only upon payment of the money for which it is given as security He has a complete legal title, so far as it is necessary to enable him to enforce his right to the estate as a pledge for the security of his money. But subject to this qualified seisin in the mortgagee, the mortgager has an estate and a seisin, which he may convey to another, which may be levied upon by an execution, (so that no deduction from the value be made on account of the outstanding mortgage,) or which he may hold and defend as a legal estate, against all persons except the *59 mortgagee and those claiming under him. In this respect, and as between all persons except the mortgagee and those claiming under him, the mortgage, before entry and foreclosure, is to be deemed a pledge, a charge or lien upon the estate, subject to which the legal rights and remedies of others may be sought, asserted and enforced in the same manner as if no such mortgage existed.
It was contended in behalf of the petitioner, that as the respondents are mere mortgagees, and as the petitioner claims a legal estate, their interests are not necessarily adverse, and that he may well have judgment for partition of his purparty of the legal estate, although all the respondents may rightfully claim their respective interests as mortgagees. But it must be considered, that the petitioner, even if by his levy he has acquired a legal estate and a seisin, to many purposes, still he can only take the estate of the mortgager, as it stood when he acquired his title, and being after the mortgages of the respondents in point of time, as the mortgager could not set up a legal title against the mortgagees, neither can the petitioner, who in tills respect is privy in estate with the mortgager. Ii therefore the mortgage of the respondent Gassner, who pleads and defends, extended to the whole of the interest and purparty claimed by the petitioner, and its validity were admitted or established, it must wholly defeat the petitioner’s claim. The case of the petitioner therefore must depend upon defeating the legal title of Gassner, either by showing its invalidity as being fraudulent against creditors, or by showing that it did not extend to and bind the whole of the estate or purparty in controversy between these parties.
An objection was made, on the other side, against the right of the petitioner to sustain this .petition, because it appeared that a prior mortgage had been made by John Soley to Peter C. Brooks, under which the latter was in possession at the time the suit was commenced.
If this mortgage extended to the whole of the purparty claimed, and had Brooks appeared and pleaded, and traversed the petitioner’s title, it is very clear, from the grounds already stated, that the objection must have prevailed. But Brooks does not appear and plead such title; it does not appear, *60 whether this mortgage extends to the whole of the purparty claimed; and there seems to be no ground upon which the respondent Gassner can set up this outstanding mortgage of Brooks, upon which he does not claim, to defeat the peti tioner. No question of the comparative title of Brooks and the petitioner is raised by these pleadings ; and we do not perceive, why the petitioner and Gassner may not proceed and try their respective and comparative legal titles, subject as they of course must be to any outstanding mortgage, in the same manner as if such mortgage did not exist. Non constat that the mortgage debt of Brooks may not be discharged in some other way ; and then his mortgage will in no respect stand in the way of either of the other parties.[1]
We therefore proceed to consider the titles of these parties, in the same manner as if there had been no prior mortgage, the issue being upon the legal title of the petitioner.
It is now held, though formerly doubted, that although the proper mode of levying an execution upon mortgaged premises is by seizing and selling the equity of redemption under the statute, yet that such equity is the real estate of the debtor, and as such may be levied on and set off by appraisement, provided that no deduction is made from the appraised value, on account of the incumbrance. The reason seems obvious ; an before suggested, the mortgage is but a lien ; it may be shown to be invalid, in various ways, or it may be discharged some other way, without affecting the land ; if it should not be, nobody can be injured but the cred tor, who makes his election so to treat the estate ; and if he is willing to take the risk, there seems to be no reason why he should not appropriate to himself this real estate of his debtor by appraisement, under the general provisions of law making real estate so liable. And having the right and power so to take, he must take it with the same immunities under which his debtor held it, one of which is, to redeem by paying the mortgage debt, if it is not otherwise discharged. White v. Bond, 16 Mass. R. 400 There seems therefore to be no objection to the petitioner’s title on that ground, there being no reason to believe that any *61 deduction from the appraised value was made on account of the mortgage.[2]
Several objections however are made to the validity of the petitioner’s title, on the ground of irregularities in his levy.
1. That it does not appear by the sheriff’s return, that he notified the judgment debtor to choose one of the appraisers.
The Court are of opinion that this objection is not sustained in point of fact, by reference to the return.
The provision in the statute, that the judgment debtor may choose one of the appraisers, is an important provision, for the security of the debtor, and ought to have a liberal construction to effect that purpose. And though the statute does not in terms require the officer to give the debtor notice, yet it is manifestly implied, because it is necessary to enable him to avail himself of a privilege obviously intended for his benefit. “ One to be chosen by the debtor if he see cause ; — and in case the debtor shall neglect or refuse, the officer shall appoint one for such debtor.” St. 1783, c. 57, § 2.[1]
It must substantially appear by the return, that he had such notice ; and if it does not so appear, when the return shows that the officer chose two appraisers, the levy will be void.
But the law has prescribed no mode of notice, and it need not therefore appear by the return how the notice was given. As an estate passes, on a levy of execution, by operation of the statute, upon a compliance with its requisites, had any particular mode of notice been prescribed, the officer should return hoto he has given notice, that the court may see whether the statute requisition has been complied with ; but otherwise where no mode of notice is required; there a general return is sufficient.
In Eddy v. Knap, 2 Mass. R. 154, the Court, remarking *62 upon a return, where it appeared that two of the appraisers were chosen by the officer, say—“It does not appear- that the debtor had the option given him by law; as the officer does not return that the debtor did not see cause to choose an appraiser.” And they held the objection fatal.
In Whitman v. Tyler, 8 Mass. R. 284, the Court, in com menting on a similar return, observe that the officer had ap pointed two appraisers, namely, one ex officio, and the other in behalf of the debtor, without certifying that the debtor had refused, or assigning any other reason ; and they held the levy void.
From the reasons assigned in these cases, it appears, that if it had been shown in the return in the one case, that the debtor had refused, and in the other, that he did not see cause to choose an appraiser, the levies would have been held , good.
In the present case, the officer returned that the debtor had neglected, which he could not have done, without notice of the time, place and occasion. The return therefore, by necessary implication alleges that he had notice ; and if in point of fact he had not, it would be a false return.[1]
2. That the execution and levy were not seasonably recorded.
There is nothing in this case which renders it necessary to consider this levy as made earlier than the 1st of January 1828, there being no attachment or conveyance affecting the title, between October and January, and the Court give no opinion upon the effect of the prior proceedings, returned by the officer. Considering it as an execution levied on the 1st of January 1828, it was recorded in the registry of deeds within three months from that time, and the objection fails.
3. That as a levy made on the 1st of January, which, as appears by the calendar, was the day of the sitting of the *63 court and the return day of the execution, it was not begun to be levied, till the sitting of the court.
There is no fact, appearing by the return or otherwise, upon which this objection can be sustained, and the Court cannot presume it.
The formal objections therefore to the petitioner’s title, as far as it is disclosed in this report, are not sustained.
We are thus brought to the principal question which has been discussed in this cause, depending upon the nature of John Soley’s interest in the premises, and the time when it became vested, so as to be capable of being conveyed by deed or taken by execution. The traverse and issue being upon the title of the petitioner, the respondents contend that the whole of John Soley’s interest in the premises was conveyed ny him, prior to the levy of the petitioner, namely, by one or the other of two deeds made by John Soley to Peter Gassner, dated respectively the 9th of September and 10th of October, 1825.
The petitioner objecting to these deeds, on grounds not now in question, but which have been settled by the jury, contends that even supposing them to be good and valid, they cannot defeat his title, because, as he contends, the interest of John Soley in the premises, being part of the estate embraced in the residuary devise of his grandfather, John Larkin, was, by the terms of his will, a contingent estate, which did not vest till the death of his mother, Elizabeth Soley, a daughter of John Larkin ; that she died 29th October 1827 ; that by that event, which was after the deeds to Gassner, and before the levy of the petitioner’s execution, the estate became vested and capable of being conveyed ; and of course, that it did not pass to Gassner by force of the deeds, but passed to the petitioner by his levy.
The respondents* contend, on the other hand, 1. That by force of the will, an interest in one eighth of the residuary estate of John Larkin the testator, vested in this grandson,
John Soley, and that this one eighth passed by his deed to Gassner, at the time of its execution, and by force of the deed itself; — but if otherwise, and if it was a contingent estate till the death of his mother, still,
*64 2. That being a deed with covenants of warranty, it ope rated by way of estoppel against John Soley and all privies in estate under him ; that the petitioner comes in as such privy in estate by his levy ; that of course, at the moment of the happening of the contingency, by which the estate vested, it operated by way of estoppel to enlarge and complete the estate of Gassner, and that this, being prior in time to the petitioner’s levy, gave to Gassner the prior and better title.
The clause in John Larkin’s will, upon which the question arises, is as follow's ; [reciting the clause before quoted at p. 49.]
It was conceded that the four children of the daughter Elizabeth Soley, of whom John was one, were all living at the time of the making of the will, the death of the testator and the death of their mother Elizabeth. Under the residuary clause therefore, under which he devises in general terms to his grandchildren, the children of said Elizabeth, they took one fourth each.
These provisions in the devise are somewhat complicated, and require a careful examination in applying them according to the events which have in fact happened.
The first obvious remark to be made upon this devise is, that the whole of the moiety of the residue was given to the daughter Elizabeth for the term of her life, determinable upon the death of her husband, should she survive him. The gift is of the income and interest; but when applied to real estate, and given for life, such a gift is deemed and construed to be a devise of the estate itself. There being a devise of the whole for life, the dependent and other estates created by it, must be remainders, either vested or contingent, or executory devises-. It is a well settled rule of law, that a gift shall not be deemed to be an executory devise, if it can operate by way of remainder ; and here it is obvious that all the gifts to the grandchildren, in the various contingencies contemplated, will operate as gifts of remainders.
Here two events or contingencies were principally contemplated, viz. the death of the wife, or of the husband, living the other. If the wife should survive, then her life estate was to cease and determine, and then she was to take one moiety in *65 fee and the four grandchildren the other moiety in fee. In the moiety given the wife, in that event, the children took nothing.' Not by force of the particular devise to them, for that gave them but one moiety, and the mother, the other ; not under the general residuary clause, because, after a gift to the mother in fee, nothing remained to pass by it.
In case the husband should survive the wife, then the income and interest of one quarter, that is, a life estate in half of this moiety is given to the husband, and the residue, to the four grandchildren. This residue embraced one half of the moiety, (that not given to their father,) in fee, and a vested remainder in the other moiety, expectant on the death of the father. These estates were to vest immediately after the determination of the particular estate, being a life estate to the mother for the joint lives of herself and her husband. It appears to us from this view of the devis,e, very clear, that as to a remainder in one half the moiety, it was contingent, dependent upon an event perfectly uncertain, namely, whether the father survived the mother. If he did, then a life estate is given to him, with remainder to the four children; if he did not, that is, if the mother survivéd him, then the same was given her in fee. The remainder thus limited was a contingent remainder, and comes within the usual definition of that estate, viz. where an estate by way of remainder is limited to take effect upon a dubious or uncertain event. 2 Bl. Comm. 169.
If this be a correct view of the case, it follows that one fourth part of the half of that moiety of the whole estate given 6y the testator to the family of his daughter Elizabeth, that is, one sixteenth of the residuary estate of John Larkin, was a contingent remainder to John Soley, that "it remained contingent to the 29th of October 1827, when it became vested by the death of his mother, after the deed to Gassner, and before the petitioner’s levy.
2. It appears to us equally clear, upon the construction of this.devise, that the four children took a vested remainder in the other moiety. The particular estate, upon the determination of which the remainder, as to this half, was to take effect in possession, was a life estate to Elizabeth Soley, determinable unon the death either of her husband or herself. If the
*66 husband died first, then they would take a moiety in fee, under that particular devise, which in that event gives one half to the wife in fee, and the other half to the four children in fee. If, on the other hand, the wife, their mother, died first, then one half is given to the four children in fee, and the other is given to the husband, their father, for life, with remainder to them in fee. So that whichsoever shall die first, eo instanti the particular estate is determined, and one half thereof vests in fee, in the four children. It was a fixed interest to take effect in possession, after a particular estate was spent, and thus comes under the legal description of a vested remainder.
The only clause in the devise which could raise a doubt upon this point, is that which provides that if the wife shall survive her husband and all her children, then the estate thus given to the four children in fee, is to go to their mother. But it appears to us, that this clause cannot change the nature of the estate devised to the children and render it contingent. It is a remainder to them in fee; and it is a known ruie of law upon this subject, that no remainder can be limited after a grant or devise in fee ; and that such a limitation can only lake effect as an executory devise. But one of the established distinctions between an executory devise and a remainder is, that in case of an executory devise, the estate previously given is not prevented from vesting, or suspended to await the contingency upon which the executory devise is to take effect; such previous estate in fee does become vested, and the operation of the executory devise is, upon the happening of the contingency, to supersede and set aside the estate previously given, and to substitute the estate created by the executory devise in its stead. The existence of this provision, therefore, did not prevent the estate given to the children from being a vested remainder, subject to all the incidents applicable to that species of estate, and among others, that of being alienable by grant or otherwise.
It is a settled rule of law, that vested remainders are actual estates, which may be devised or conveyed by any mode of conveyance not requiring livery of seisin, and by force of the statute of this State may be levied upon by execution. Si. 1783, c. 57, § 4.
*67 At the time therefore of the execution of the deeds of John Soley to Peter Gassner, Soley had a vested estate in one sixteenth of the residuary estate of his grandfather, subject to the life estate of his mother, and this duly passed by the deed of Soley to Gassner, whereby he became seised, subject only to such life estate in the mother.
3. But the respondent Gassner further contends that, by the deed of John Soley to him, Soley conveyed the whole of the one eighth A the estate devised to him by his grandfather; that although one half of that devise was, at the time of the execution of the deed, a contingent remainder, and did not pass by that deed, still that, when the estate afterwards became vested by the decease of his mother, his deed operated by way of estoppel, to bind himself and all those who came in under him, or were privies in estate with him, by subsequent conveyance ; that the petitioner, coming in by levy of execution, which is a species of statute conveyance, would stand as such privy in estate ; that this estoppel operated by way of enlarging and confirming the interest of the grantee in the land, and thus perfected and completed the title of Gassner.
If the deeds upon which the respondent relies contained the supposed matter of estoppel, we are not disposed to deny the legal consequences attributed to it. But upon an examination of these deeds, considered with reference to the doctrine of estoppel, we think they do not contain any thing which prevents the petitioner from asserting his title to that moiety of the devise, which was then contingent, but which, by the happening of the event, became vested afterwards, and before his levy.
Without following the learned counsel into all the distinctions taken in their arguments upon the doctrine of estoppel, it is perhaps sufficient to say, that the petitioner’s case upon this point was put upon two grounds ; first, that by the grant and covenants in the deeds, by which Soley conveyed to Gassner, he and those claiming under him were estopped to deny that he had and granted the title now in controversy ; and secondly, that the covenants of warranty in Soley’s deed to Gassner worked such an estoppel.
Bui upxn examining the deeds it appears that he nowhere *68 covenants or asserts the amount or quantity of the estate, but after reciting the will, grants, bargains and sells, all his right, title and interest, in and to certain lands described, including the property of which partition is now prayed.
The indenture, which is the most formal instrument, and principally relied upon, and in which his father, mother and sister joined with John Soley, to strengthen and confirm the security to Gassner, after reciting the will, the former conveyance and the willingness of Gassner to make further advances, proceeds thus; “they do grant, bargain, &c. to Peter Gassner, his heirs and assigns, all the right, title, interest and estate, of them and each of them, in and to an undivided moiety of, &c. (describing the parcels of estate,) being the undivided moiety of all the real estate, whereof the said John Larkin died seised and possessed, and which moiety he devised and bequeathed to the said parties of the first part, and also being the same several lands and tenements which are mentioned and described, or intended to be, in the said assignment, herein above referred to.” There is in this indenture no stipulation, no averment, that his share and purparty was of any particular proportion, nor is a subsequent grantee estopped from showing what this proportion then was. It is quite manifest, that .this conveyance is fully satisfied by applying it to the vested inter est. No allegation or averment is falsified by a denial of the claim to the sixteenth part in controversy, because there is no averment in the deed of what the nature or extent of» his, the grantor’s right, title and interest was, under his grandfather’s will.
And the same considerations apply substantially to the estoppel supposed to be created by the warranty of John Soley, by which the petitioner, as privy in estate with him, is alleged to be bound. The grant in the deed is of all his right, title and interest in the land, and not of the land itself, or any particular estate in the land. The warranty is of the premises, that is, of the estate granted, which was, all his right, title and interest. It was equivale at to a warranty of the estate he then held or was seised of, and must be confined to estate vested A conveyance of all the right, title and interest in lands, is certainly sufficient to pass the land itself, if the party convey *69 ing has an estate therein, at the time of the conveyance; but it passes no estate which is not then possessed by the party. Brown v. Jackson, 9 Wheat. 452.
The grant, in legal effect, operated only to pass the vested interest, and not the contingent interest, and the warranty, being coextensive with the grant, did not extend to the contingent interest, and of course did not operate upon it by way of estoppel.

New trial granted.

 See Fuller v. Bradley, 23 Pick. 9.

 Mechanics Bank v. Williams, 17 Pick. 438; Litchfield v. Cudworth, 15 Pick. 23. By Rev St. c. 73, § 31, all rights of redeeming mortgaged real estate may be taken and set off on execution for debts of the mortgager, in the same manner as the land might be, if it were unincumbered, excepting that the appraisers shall deduct the value of the incumbrance, when known, from the estimated value of the premises, and the sum so deducted shall bti stated in the return of the execution.

 Rev. Stat. c. 73, § 3.

 See Bugnon v. Howes, 1 Shepl. 154; Sturdivant v. Sweetser, 3 Fairf. 520 Nickerson v. Whittier, 2 Appleton, 223; Means v. Osgood, 7 Greenl. 146; Mun roe v. Reding, 3 Shepl. 153; Buck v. Hardy, 6 Greenl. 162; Rev. Stat. c. 73, § 22, 23. If the officer return, that he chose two of the appraisers, “ A., the debtor, having neglected to choose one,” when B. was in fact the debtor, the en*or, unamended, is fatal to the levy. Litchfield v. Cudworth, 15 Pirk. 23.